UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| RICHARD JOSEPH CRANE, | ) | Case No. CV 15-5647 DSF(JC) |
| | ) | |
| | ) | |
| Petitioner, | ) | ORDER (1) DISMISSING PETITION |
| | ) | FOR WRIT OF HABEAS CORPUS |
| v. | ) | AND ACTION; (2) DENYING |
| | ) | REMAINING MOTIONS (DOCKET |
| | ) | NOS. 18, 21, 38); AND (3) DENYING |
| JEFFREY BEARD, Secretary of | ) | A CERTIFICATE OF |
| CDCR, | ) | APPEALABILITY |
| | ) | |
| | ) | |
| Respondent. | ) | |

## I.   SUMMARY

On July 13, 2015, petitioner Richard Joseph Crane ("petitioner"), a California state prisoner proceeding *pro se*, signed a Petition for Writ of Habeas Corpus by a Person in State Custody Pursuant to 28 U.S.C. § 2254 ("Petition").[1]

///

---

[1] The Petition consists of an eight-page form ("Petition Form"), an attached memorandum ("Petition Memo"), attached exhibits ("Petition Exhibits" or "Petition Ex."), and a separately lodged transcript of a February 7, 2012 proceeding ("Transcript") before the California Board of Parole Hearings ("Board" or "Parole Board") which, in accordance with petitioner's request, is also construed to be an exhibit attached to the Petition.  (Docket Nos. 1, 47).

1    Petitioner challenges his conditions of confinement, the 2012 Parole Board

2    decision denying him parole for seven years, and the adjudication of petitioner's

3    challenges to such decision in the Los Angeles County Superior Court ("Superior

4    Court").  (Petition at 5-6; Petition Memo at i-ii & 2).  More specifically, and

5    construed liberally, the Petition claims:  (1) housing determinations of the

6    California Department of Corrections and Rehabilitation ("CDCR") have

7    effectively denied petitioner parole and have violated his Eighth Amendment right

8    to safety from other prisoners, in retaliation for petitioner's various efforts to seek

9    redress in court (Ground One); (2) the Board failed to cite evidence to support its

10    finding of "dangerousness," relied on false evidence, violated the Ex Post Facto

11    Clause by applying Proposition 9,[2] and imposed a disproportionate term (Ground

12    Two); (3) the Superior Court improperly failed to hold an evidentiary hearing in

13    adjudicating petitioner's state habeas petition challenging the Board's denial of

14    parole (Ground Three); and (4) the Superior Court improperly refused to entertain

15    petitioner's assertedly unexhausted challenge to the Board's use of false allegations

16    in denying him parole even though a petition for writ of mandate was the proper

17    avenue for petitioner's claim that the CDCR refused to process petitioner's

18    administrative appeals relating to the same (Ground Four).

19    As it plainly appears from the face of the Petition and its exhibits that

20    petitioner is not entitled to federal habeas relief as requested, the Petition and this

21    action are dismissed pursuant to Rule 4 of the Rules Governing Section 2254 Cases

22    _____

23    [2]Proposition 9, the "Victims' Bill of Rights Act of 2008: Marsy's Law," ("Marsy's Law")
is a proposition passed by California voters in 2008, and was codified in California Penal Code

24    § 3041.5(b)(3).  See generally Gilman v. Schwarzenegger, 638 F.3d 1101, 1103-05 (9th Cir.

25    2010).  It altered the frequency of parole suitability hearings for prisoners found unsuitable for
parole.  Id.  Prior to the adoption of Marsy's Law, the default was for reconsideration of parole

26    suitability at a new hearing in one year, although the Board had discretion to defer the next
parole suitability hearing for up to five years.  Id.  Marsy's Law increased the presumptive

27    deferral period to fifteen years, and the Board now has less discretion to deviate from that

28    presumption.  Cal .Penal Code § 3041.5.  Id.  In petitioner's case the Board rendered a seven-
year denial.  (Petition Memo at 48; Transcript at 141, 146).

2

in the United States District Courts ("Habeas Rule 4").  In light of the foregoing determination:  (1) respondent's pending Motion to Dismiss the Petition ("Motion to Dismiss") is moot and is denied as such; (2) petitioner's Motion for Preliminary Injunction and Temporary Restraining ("Injunction Motion") is denied; and (3) petitioner's Motion for "Doe Status" ("Doe Motion") is moot and is denied as such.

## II.   PROCEDURAL HISTORY[3]

### A.   State Proceedings

On November 3, 1981, a Superior Court jury convicted petitioner of second degree murder, kidnapping, and assault with a deadly weapon.   (Petition Form at 2).  The court sentenced petitioner to sixteen years to life plus eight years in state prison.  (Petition Form at 2).  In August 1996, February 2002, and March 2007, the Board held parole hearings and denied petitioner parole.  (Petition Memo at 2).  On February 7, 2012, the Board held another parole hearing and denied petitioner parole for seven years ("2012 Parole Board Decision").  (Petition Memo at 2; Transcript; Lodged Doc. 1).

On May 1, 2013, petitioner signed a habeas petition ("First State Petition") which was formally filed in the Superior Court on May 8, 2013, and challenged petitioner's conditions of confinement and the 2012 Parole Board Decision. (Petition Ex. F; Lodged Doc. 2).  On or about October 4, 2013, petitioner filed a motion for discovery, or in the alternative, an evidentiary hearing with respect to the First Petition.  (Petition Ex. F).  On October 4, 2013, the Superior Court denied

---

[3]Although the Court's disposition of the Petition and this action is predicated only upon what plainly appears from the face of the Petition (including the Petition Form, the Petition Memo, the Petition Exhibits, and the Transcript, which itself is an exhibit to the Petition), a broader procedural history is set forth for context.  Such procedural history is derived from the Petition, the Petition Memo, the Petition Exhibits, the documents lodged by respondent in conjunction with the Motion to Dismiss ("Lodged Doc.") and the documents submitted by petitioner in conjunction with his previously granted motion to expand and certain previously granted requests for judicial notice.  (Docket Nos. 23, 40, 41).

such motion in a reasoned decision, essentially concluding, as a matter of state law, that petitioner was not entitled to the requested relief.  (Petition Ex. F).  On December 18, 2013, the Superior Court denied the First State Petition on the merits in a reasoned decision.  Among other things, the Superior Court found that:  (1) "some evidence" supported the 2012 Parole Board Decision that petitioner currently presents an unreasonable risk of danger to society and therefore is not suitable for parole; (2) the application of Marsy's Law to petitioner does not violate the Ex Post Facto Clause because Marsy's Law merely changes the administrative method by which a parole release date is set, not the inmate's term of confinement, and because the law provides a mechanism by which an inmate may seek and be granted an advanced hearing; and (3) petitioner's challenges to the conditions of his confinement were moot to the extent they concerned conditions at an institution where petitioner was no longer housed, and petitioner had otherwise failed to demonstrate that he had exhausted administrative remedies regarding such challenges.  (Petition Ex. G).

On March 28, 2014, petitioner signed a habeas petition ("Second State Petition") which was formally filed in California Court of Appeal, Second Appellate District, Case No. B255358 on April 7, 2014, and raised claims similar to Grounds One through Three in the instant federal Petition.  (Lodged Doc. 3). On April 21, 2014, the California Court of Appeal summarily denied the Second State Petition and stated that to the extent petitioner challenged the conditions of his confinement, the denial was without prejudice to petitioner raising such claims in the appellate district with jurisdiction over the institution where petitioner was incarcerated.  (Lodged Doc. 4).

On October 7, 2014, petitioner signed a habeas petition ("Third State Petition") which was formally filed in California Supreme Court Case No. S221809 on October 10, 2014, and raised a claim similar to Ground Four in the instant federal Petition.  (Lodged Doc. 7).  On January 14, 2015, the California

Supreme Court denied the Third State Petition with a citation to In re Dexter, 25
Cal. 3d 921, 925-26 (1979) ("prisoners are generally required to seek
administrative relief before resorting to the courts").  (Petition Ex. 1; Lodged Doc.
8).

On March 12, 2015, petitioner signed another habeas petition ("Fourth State
Petition") which was formally filed in California Supreme Court Case No.
S225271 on March 23, 2015, and raised claims similar to Grounds One through
Three in the instant federal Petition.  (Lodged Doc. 5).  On June 10, 2015, the
California Supreme Court summarily denied the Fourth State Petition without
comment.  (Petition Ex. 2; Lodged Doc. 6).

### B.    Motion to Dismiss

On March 4, 2016, respondent filed the Motion to Dismiss, arguing that the
Petition should be dismissed as untimely, that Grounds Three and Four should be
dismissed for failure to state a cognizable claim, and that Ground Four should be
dismissed as unexhausted.  On April 6, 2016, petitioner filed an Opposition to the
Motion to Dismiss.  Respondent did not file a reply.  The Motion to Dismiss has
been submitted for decision.

### C.    Injunction Motion

On March 21, 2016, petitioner filed the Injunction Motion.  Petitioner
generally alleges that prison officials have been acting in concert to retaliate
against him for exercising certain rights by having petitioner assaulted, placed in
segregation, transferred between prisons, retaining his legal documents, and not
delivering court orders.  (Injunction Motion at 2).  Specifically, petitioner alleges
that he was told he would be transferred to San Diego County to serve as a
prosecution witness in an assault case involving an elderly prisoner, and asserts
that such a transfer would "disrupt" his efforts to "win release" from prison,
presumably referring to his prosecution of this action.  (Injunction Motion at 2).
Petitioner alleges that the prosecutor in the San Diego case is interfering with his

1   ability to respond to the Motion to Dismiss.  (Injunction Motion at 4).  Petitioner
2   asks that the Court enjoin respondent from:  (1) transferring petitioner during the
3   pendency of this action; (2) depriving petitioner of his legal papers during the
4   pendency of this action; and (3) placing petitioner in a cell with an "incompatible"
5   prisoner, or refusing petitioner an individual cell for his own protection that is not
6   in administrative segregation.  (Injunction Motion – Attached Proposed Order
7   [Docket No. 21-1]).

8        On May 12, 2016, respondent filed an Opposition to the Injunction Motion,
9   asserting that petitioner had not pleaded any grounds justifying temporary or
10  permanent injunctive relief.  On July 18, 2016, petitioner filed a "Response,"
11  arguing that an injunction is needed to "protect his very life, from cell assignments
12  with predatory, violent prisoners, which are being staged by prison officials to
13  harm petitioner for his litigation activities."  (Response at 5).  Petitioner alleges
14  that members of the CDCR have retaliated against petitioner for years by having
15  other prisoners assault petitioner and by filing false reports.  (Response at 8).
16  Petitioner cites to an instance in 2010 in which he allegedly requested a different
17  cell assignment after he was placed with a dangerous inmate to no avail, resulting
18  in an assault on petitioner during which he suffered a broken nose and ribs.
19  (Response at 9).

20       On July 21, 2016, petitioner filed a Supplemental Response in support of the
21  Injunction Motion  ("First Supplement").  Petitioner alleges that on July 12, 2016,
22  he was "seriously assaulted inside his cell by a cellmate with violent propensities,"
23  yet prison officials have not segregated that cellmate and have threatened to place
24  petitioner in segregation.  (First Supplement at 2).  Petitioner alleges he suffered a
25  mandible fracture and an orbital fracture.  (First Supplement at 3).  Petitioner again
26  argues that prison officials have repeatedly placed dangerous prisoners in the same
27  cell as petitioner and have refused him single-cell
28  ///

6

status.  (First Supplement at 2).  Attached to the First Supplement are several prison grievance forms wherein petitioner has requested single-cell status.[4]

On December 9, 2016, petitioner filed a Second Supplement in support of the Injunction Motion ("Second Supplement").  He essentially alleges that on September 1, 2016, his "lower-bunk, lower tier" status was removed and he was moved to a second level cell and housed with an inmate who had been in "numerous fights."  (Second Supplement at 2).  Such cellmate was later sent to administrative segregation for fighting.  (Second Supplement at 2).  Petitioner further alleges that on October 5, 2016, he was housed with an inmate who claims to be a former member of the Aryan Brotherhood and who makes threats against cell mates and was forced to use the upper bunk.  (Second Supplement at 2-3).  Petitioner argues that the foregoing is part of a continuing conspiracy against him due to his litigation against the CDCR.  (Second Supplement at 4, 6).  Attached to the Second Supplement are several prison grievance forms wherein petitioner has requested single-cell status.

**D.   Doe Motion**

On July 29, 2016, petitioner filed the Doe Motion, requesting that he be permitted to proceed with a "Doe Status" to protect his safety and the safety of his witnesses from other persons who may harm them based upon matters disclosed during this action.  Respondent did not file a response to the Doe Motion.

///

---

[4]On August 15, 2016, petitioner filed "Petitioner's Declarations in Support of Preliminary Injunction" to which he attached as exhibits declarations of other inmates ("Declaration Ex."). One inmate declares that he heard the petitioner yelling from his cell on July 12, 2016 and saw petitioner exit the cell with numerous injuries to petitioner's face and head.  (Declaration Ex. B). Another inmate declares that he heard the attacker say that he had attacked petitioner and had been placed in petitioner's cell to attack petitioner.  (Declaration Ex. A).  Another inmate declares that he heard threats from another cellmate housed with petitioner on the night of February 27, 2016, and that the next morning that cellmate was removed from petitioner's cell and never returned.  (Declaration Ex. C).

7

**III.   DISCUSSION**

      **A.   Summary Dismissal of the Petition Is Appropriate**

      A district court may dismiss a habeas petition summarily "[i]f it plainly appears from the face of the petition and any attached exhibits that the petitioner is not entitled to relief in the district court."  Habeas Rule 4; <u>Boyd v. Thompson</u>, 147 F.3d 1124, 1127-28 (9th Cir. 1998).  Here, irrespective of the parties' contentions in connection with the Motion to Dismiss, dismissal of the Petition and this action pursuant to Habeas Rule 4 is appropriate, rendering denial of the Motion to Dismiss, the Injunction Motion and the Doe Motion likewise appropriate.  The Court addresses each of petitioner's claims below.

      **1.   Ground One**

      Ground One of the Petition is not cognizable on federal habeas review because it challenges petitioner's conditions of confinement and does not implicate the fact or duration of his confinement.  Petitioner complains that CDCR officials have violated his Eighth Amendment rights to safety from prisoners and have retaliated against petitioner for seeking redress in court by their custody decisions, prisoner transfers, and issuance of false rules violations reports.  (Petition Form at 5; Petition Memo at 3-8).  Habeas corpus "is the exclusive remedy . . . for the prisoner who seeks 'immediate or speedier release' from confinement."  <u>Skinner v. Switzer</u>, 562 U.S. 521, 525 (2011) (citation omitted).  A challenge to the fact or duration of confinement that would, if successful, result in immediate or speedier release falls within the "core" of habeas corpus.  <u>Preiser v. Rodriguez</u>, 411 U.S. 475, 487-89 (1973).  A civil rights action – not a habeas action – is the exclusive vehicle for a state prisoner's claim that does not fall within this "core."  <u>Nettles v. Grounds</u>, 830 F.3d 922, 927-31 (9th Cir. 2016) (en

///

///

///

8

banc), <u>cert. denied</u>, 137 S. Ct. 645 (2017).[5]  When success on a prisoner's claims "would not necessarily lead to his immediate or earlier release from confinement," such claims do not fall within "the core of habeas corpus[.]"  <u>Id.</u> at 935 (citation omitted).  Here, even assuming the referenced alleged false violation reports and other challenged conditions were among the factors considered by the Parole Board in reaching the 2012 Parole Board decision, success on Ground One would not necessarily entitle petitioner to an accelerated release from confinement.  <u>See</u> <u>Nettles</u>, 830 F.3d at 935 (challenge to validity of disciplinary hearing that led to rules violation report not cognizable on federal habeas review notwithstanding alleged impact on parole determination); <u>Ramirez v. Galaza</u>, 334 F.3d 850, 855, 859 (9th Cir. 2003) ("[H]abeas jurisdiction is absent . . . where a successful challenge to a prison condition will not necessarily shorten the prisoner's sentence."), <u>cert. denied</u>, 541 U.S. 1063 (2004).  Accordingly, such claims are not cognizable on federal habeas review.[6]

---

[5]<u>Nettles</u> was heard by an 11-judge en banc panel of the Ninth Circuit.  Five judges joined in the principal opinion, one judge issued a concurrrence, joining in only portions of the principal opinion – which portions constitute the majority opinion – and five judges dissented.  This Court cites only to the majority opinion.

[6]Although a district court, after notifying and obtaining informed consent from a prisoner, may construe a habeas petition to plead a civil rights claim if the petition is amenable to conversion on its face, <u>see</u> <u>Nettles</u>, 830 F.3d at 935-36, the Court declines to do so here.  Prisoner civil rights actions are subject to different requirements than federal habeas proceedings.  The filing fee for civil rights actions is $350 rather than the $5 habeas filing fee.  28 U.S.C. § 1914(a).  Further, should petitioner seek to bring a civil rights action in forma pauperis ("IFP") he must file the appropriate documentation to qualify for IFP status and would be financially responsible for paying the full $350 filing fee from his prison trust account.  28 U.S.C. § 1915(b)(1).  It is not in the interest of judicial economy to convert the Petition into a federal civil rights complaint because the case would, at a minimum, require additional court resources to deal with the problems created by the different filing fees, the absence of information called for by the civil rights complaint form utilized in this district (*e.g.*, whether persons sued are sued in an individual or official capacity), and the potential service issues relative to individuals whose conduct is alleged to have deprived petitioner of his constitutional

(continued...)

9

### 2.   Ground Two

Ground Two of the Petition plainly lacks merit.  Ground Two concerns the Board's adverse parole decision.  Petitioner alleges that the Board failed to cite evidence of current dangerousness, relied on false evidence, and violated the Ex Post Facto Clause by imposing a seven-year denial under Marsy's Law, and further argues that his term is disproportionate to that imposed for similar crimes. (Petition Form at 5-6; Petition Memo at 29-57).

"There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence."  Greenholtz v. Inmates of Nebraska Penal and Correctional Complex, 442 U.S. 1, 7 (1979).  In some instances, however, state statutes may create liberty interests in parole release entitled to protection under the federal Due Process Clause.  See Board of Pardons v. Allen, 482 U.S. 369, 371 (1987); Greenholtz, 442 U.S. at 12.  The Ninth Circuit has held that California's statutory provisions governing parole create such a liberty interest.  See Hayward v. Marshall, 603 F.3d 546, 555 (9th Cir. 2010) (en banc), disapproved on other grounds, Swarthout v. Cooke, 562 U.S. 216 (2011).[7]

---

[6](...continued)

rights.  Accordingly, the Court declines to convert the instant action into a federal civil rights action without prejudice to petitioner filing a separate federal civil rights action.  The Court, however, makes no representation as to the potential viability – procedurally or on the merits – of any such action and takes judicial notice that petitioner previously filed a civil rights action with this Court alleging conditions similar to those alleged in the instant Petition.  See Crane v. Yarborough, et al., CV 05-8534-DSF(JC), Docket Nos. 111, 120-21, 126-27 (Report and Recommendation of United States Magistrate Judge recommending dismissal of operative second amended complaint without leave to amend under Fed. R. Civ. P. 12(b)(6), order and judgment accepting same, and Ninth Circuit orders finding appeal therefrom frivolous and dismissing appeal for failure to pay fees).

[7]In Swarthout v. Cooke, the Supreme Court did not reach the question of whether California law creates a liberty interest in parole, but observed that the Ninth Circuit's affirmative answer to this question "is a reasonable application of our cases."  Swarthout v. Cooke, 562 U.S. at 219-20 (citations omitted).  The Ninth Circuit has held that Swarthout v.

(continued...)

Petitioner's contention that the Board relied on allegedly false evidence or failed to cite evidence of current dangerousness does not establish a constitutional violation. "In the context of parole, . . . the procedures required are minimal." Swarthout v. Cooke, 562 U.S. at 220.  Due Process requires that the State furnish a parole applicant with an opportunity to be heard and a statement of reasons for a denial of parole.  Greenholtz, 442 U.S. at 16; see Swarthout v. Cooke, 562 U.S. at 220 (citation omitted).  "The Constitution does not require more." Greenholtz, 442 U.S. at 16; accord Swarthout v. Cooke, 562 U.S. at 220 (citation omitted).  Here, the Transcript reflects that petitioner, who was represented by counsel at the 2012 Parole Board hearing, had an extensive opportunity to be heard, and that the Board issued a written statement of reasons for its denial.  Petitioner was entitled to no further process.    The Swarthout Court rejected any contention that the federal Due Process Clause contains a guarantee of evidentiary sufficiency with respect to a parole determination.  See Swarthout v. Cooke, 562 U.S. at 220-22 ("No opinion of ours supports converting California's 'some evidence' rule into a substantive federal requirement.") (expressly disapproving of Ninth Circuit cases to the contrary, including Hayward v. Marshall, 603 F.3d at 559-61).  Thus, petitioner's claim that the Board's decision relied on false evidence or did not cite sufficient evidence falls well short of demonstrating that petitioner is in custody "in violation of the Constitution or laws or treaties of the United States" to entitle petitioner to habeas relief.  See 28 U.S.C. § 2254(a); Swarthout v. Cooke, 562 U.S. at 222 ("finding that there was no evidence in the record supporting parole denial is irrelevant unless there is a federal right at stake") (emphasis original).  Summary rejection of this claim is appropriate.  See, e.g., Bird v. Board, 2016 WL 3456838, at *2 (D. Mont. May 16, 2016) (summarily dismissing habeas claim challenging

---

[7](...continued)
Cooke "did not disturb our conclusion that California law creates a liberty interest in parole." Roberts v. Hartley, 640 F.3d 1042, 1045 (9th Cir. 2011) (citation omitted).

1   parole suitability determination as foreclosed by <u>Swarthout</u> where, as here,

2   petitioner received minimal procedural protection required, *i.e.*, an opportunity to

3   be heard and a statement of reasons why parole was not deemed appropriate; such

4   was the "beginning and the end of federal habeas" analysis (quoting <u>Swarthout</u>,

5   562 U.S. at 220)), <u>adopted</u>, 2016 WL 3509452 (D. Mont. June 21, 2016); <u>Aranda</u>

6   <u>v. Seibel</u>, 2016 WL 749061, at *3-*4 (C.D. Cal. Feb. 24, 2016) (same); <u>Caldwell v.</u>

7   <u>Valenzuela</u>, 2013 WL 941970, at *2 (C.D. Cal. Mar. 11, 2013) (same).

8         Petitioner also fails to demonstrate that he is entitled to relief on his claim

9   that the application of "Marsy's Law" violates *ex post facto* principles because it

10  increased the deferral periods between subsequent parole hearings.  <u>See</u> <u>Gilman v.</u>

11  <u>Schwarzenegger</u>, 638 F.3d 1101, 1103-04 (9th Cir. 2011) (discussing the changes

12  effected by Marsy's Law).  The Ninth Circuit has rejected *ex post facto* challenges

13  by prisoners with indeterminate life sentences to Marsy's Law.  <u>See</u> <u>Gilman v.</u>

14  <u>Brown</u>, 814 F.3d 1007, 1016-17 (9th Cir. 2016), <u>cert. denied</u>, 137 S. Ct. 650

15  (2017); <u>see also</u> <u>Borstad v. Hartley</u>, 2016 WL 4499775, at *1 (9th Cir. Aug. 26,

16  2016) (finding that challenges to Marsy's Law do not go to the "validity of any

17  confinement or. . .  the particulars affecting its duration, but rather only the timing

18  of each petitioner's next parole hearing," and therefore district courts lacked

19  habeas jurisdiction to consider challenges) (internal citation omitted).

20  Accordingly, it is perfectly clear that petitioner's *ex post facto* claim fails.  <u>See,</u>

21  <u>e.g.</u>, <u>Alarcon v. Board of Parole Hearings</u>, 2015 WL 9165719, at *6 (C.D. Cal.

22  Nov. 3, 2015) (rejecting claim that Marsy's Law violates the Ex Post Facto

23  Clause), <u>adopted</u>, 2015 WL 9093622 (C.D. Cal. Dec. 16, 2015), <u>certificate of</u>

24  <u>appealability denied</u>, No. 16-55114 (9th Cir. 2016).

25        Finally, petitioner's claim that his indeterminate life sentence is

26  disproportionate to his crime does not merit habeas relief.  Successful Eighth

27  Amendment challenges to the proportionality of a sentence have been "exceedingly

28  rare."  <u>Rummel v. Estelle</u>, 445 U.S. 263, 272 (1980).  The Eighth Amendment

12

1  forbids only "extreme" sentences that are "grossly disproportionate" to the crime.

2  Graham v. Florida, 560 U.S. 48, 59-60 (2010) (quoting Harmelin v. Michigan, 501

3  U.S. 957, 1001 (1991) (Kennedy, J., concurring)).  A possible life sentence for

4  murder, even without the possibility of parole, is not constitutionally

5  disproportionate.  Harris v. Wright, 93 F.3d 581, 583-85 (9th Cir. 1996); United

6  States v. LaFleur, 971 F.2d 200, 211 (9th Cir. 1991) ("it is clear that a mandatory

7  life sentence for murder does not constitute cruel and unusual punishment") (citing

8  Harmelin), cert. denied, 507 U.S. 924 (1993).  Accordingly, summary dismissal of

9  this claim is appropriate.  See, e.g., Molina v. Valenzuela, 2014 WL 4748308, at *3

10  (C.D. Cal. Sept. 23, 2014) (summarily rejecting similar claim); Siliezar v. Board of

11  Parole Hearings, 2014 WL 656558, at *7 (C.D. Cal. Feb. 14, 2014) (same).

12  **3.   Grounds Three and Four**

13  Like Ground One, Grounds Three and Four of the Petition are not

14  cognizable on federal habeas corpus review.

15  First, Grounds Three and Four involve only state law violations.  In Ground

16  Three, petitioner challenges the Superior Court's refusal to hold an evidentiary

17  hearing on habeas review to allow petitioner to prove that allegedly false evidence

18  was used against him to deny him parole.  (Petition Memo at 15-19, 58-61).  In

19  Ground Four, petitioner argues that a writ of mandate to the state courts was the

20  "proper avenue" for him to address his claims, since the CDCR allegedly refused

21  petitioner administrative review of "numerous false allegations of fighting [and]

22  smoking."  (Petition Form at 6).  Federal habeas relief is not available for an

23  alleged error in the interpretation or application of state law.  See Estelle v.

24  McGuire, 502 U.S. 62, 67-68 (1991); see also Wilson v. Corcoran, 562 U.S. 1, 5

25  (2010) (quoting Estelle re same).  Further, "a petition alleging errors in the state

26  post-conviction review process is not addressable through habeas corpus

27  proceedings."  Franzen v. Brinkman, 877 F.2d 26, 26 (9th Cir.) (per curiam), cert.

28  denied, 493 U.S. 1012 (1989); see also Cooper v. Neven, 641 F.3d 322, 331 (9th

1  Cir.) ("grounds stem[ming] from activities arising out of the state trial court's
2  consideration of [a petitioner's] last state habeas petition" are "not cognizable for
3  federal habeas review" ) (citing Franzen, 877 F.2d at 26), cert. denied, 565 U.S.
4  1015 (2011).

5      Second, although petitioner has suggested that his foregoing claims arise
6  under the First and Fourteenth Amendments (Petition Form at 6), such
7  characterization does not make the claims cognizable on federal habeas review.
8  See Langford v. Day, 110 F.3d 1380, 1389 (9th Cir. 1996) (a state law claim
9  cannot be transformed "into a federal one merely by asserting a violation of due
10 process"), cert. denied, 522 U.S. 881 (1997).  His general allegation that the CDCR
11 denied him his federal constitutional "right of redress" is not sufficient to convert
12 this claim into a cognizable federal claim.  "The 'government' to which the First
13 Amendment guarantees a right of redress of grievances includes the prison
14 authorities." Bradley v. Hall, 64 F.3d 1276, 1279 (9th Cir. 1995), overruled on
15 other grounds, Shaw v. Murphy, 532 U.S. 223, 230 n.2 (2001), as stated in
16 Blaisdell v. Frappiea, 729 F.3d 1237, 1243 (9th Cir. 2013).  However, the right to
17 petition imposes no requirement upon prison officials to respond to a complaint in
18 a particular way.  See Smith v. Arkansas State Highway Employees, Local 1315,
19 441 U.S. 463, 465 (1979) (per curiam) ("[T]he First Amendment does not impose
20 any affirmative obligation on the government to listen, [or] to respond . . .").  How
21 the CDCR may or may not respond to petitioner's complaints concerns a condition
22 of confinement and, as with Ground One, granting petitioner relief on such a claim
23 will not necessarily shorten the duration of his confinement.  Accordingly,
24 Grounds Three and Four are not cognizable for review in this federal habeas
25 action.

26      **B.     Petitioner's Injunction Motion Is Denied**
27      "A preliminary injunction is an extraordinary remedy never awarded as of
28 right."  Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7, 24 (2008)

1   (citations omitted).  It serves not as a preliminary adjudication on the merits, but as

2   a device to preserve the status quo and prevent irreparable loss of rights before

3   judgment.  Textile Unlimited, Inc. v. A. BMH & Co., Inc., 240 F.3d 781, 786 (9th

4   Cir. 2001).  "A plaintiff seeking a preliminary injunction must establish that he is

5   likely to succeed on the merits, that he is likely to suffer irreparable harm in the

6   absence of preliminary relief, that the balance of the equities tips in his favor, and

7   that an injunction is in the public interest.  Winter, 555 U.S. at 20 (citations

8   omitted); see also Lopez v. Brewer, 680 F.3d 1068, 1072 (9th Cir. 2012) (citing

9   Winter re same; noting that a preliminary injunction "should not be granted unless

10  the movant, *by a clear showing*, carries the burden of persuasion") (citations

11  omitted; emphasis original); Towery v. Brewer, 672 F.3d 650, 657 (9th Cir.) (per

12  curiam) (same; noting that these principles apply even in the context of an

13  impending execution), cert. denied, 565 U.S. 1243 (2012).  The standard for

14  issuance of a temporary restraining order – which petitioner also requests – is

15  similar to that for issuance of a preliminary injunction.  See Garrett v. Escondido,

16  465 F. Supp. 2d 1043, 1049 (S.D. Cal. 2006).

17       Here, petitioner has failed to demonstrate a likelihood of success on the

18  merits of his underlying claims to warrant injunctive relief.  As discussed herein, it

19  is perfectly clear that petitioner is not entitled to relief on any of his claims.

20       **C.    The Other Remaining Motions Are Denied as Moot**

21       In light of the summary dismissal of all of petitioner's stated grounds for

22  relief, respondent's Motion to Dismiss and petitioner's Doe Motion are moot and

23  are denied as such.

24  ///

25  ///

26

27

28

15

## IV.   CONCLUSION AND ORDERS

For the foregoing reasons, the Court concludes that the Petition must be dismissed summarily, pursuant to Habeas Rule 4, because it "plainly appears" that none of petitioner's claims warrant relief, nor could they do so with amendment.

IT IS HEREBY ORDERED:  (1) the Petition and this action are dismissed; (2) the Motion to Dismiss is denied as moot; (3) the Injunction Motion is denied; (4) the Doe Motion is denied as moot; and (5) the Clerk shall enter judgment accordingly.

IT IS FURTHER ORDERED that a certificate of appealability is denied because petitioner has failed to make a substantial showing of a denial of a constitutional right and, under the circumstances, jurists of reason would not disagree with the Court's determinations herein.

DATED:     4/3/17

_____
HONORABLE DALE S. FISCHER
UNITED STATES DISTRICT JUDGE